IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| TONYA RAYMOND, | ) | CASE NO. 1:11 CV 156 |
| | ) | |
| Plaintiff, | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Defendant. | ) | |

## Introduction

This is an action for judicial review of the final decision of the Commissioner of Social Security denying the application of the plaintiff, Tonya Raymond, for supplemental security income.

The Administrative Law Judge ("ALJ"), whose decision became the final decision of the Commissioner, found that Raymond had severe impairments consisting of status post right ankle fracture and depression/anxiety.[1] He determined that none of these impairments, or combination thereof, met or medically equaled a listing in Appendix 1 to the regulations.[2] The ALJ made the following finding regarding Raymond's residual functional capacity ("RFC"):

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined

---

[1] ECF # 12, Transcript ("Tr.") at 14.

[2] *Id.*

in 20 CFR 416.967(b) except that the claimant can do work that involves no climbing; pushing or pulling with the lower extremities; infrequent contact with the general public; or more than simple repetitive tasks.[3]

The ALJ decided that Raymond had no past relevant work.[4]

Based on an answer to a hypothetical question posed to the vocational expert ("VE") at the hearing setting forth the RFC finding quoted above, the ALJ determined that a significant number of jobs existed locally and nationally that Raymond could perform.[5] The ALJ, therefore, found Raymond not under a disability.[6]

Raymond asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically, Raymond presents two issues for decision:

- Did the ALJ err at steps four and five by finding a residual functional capacity for Raymond that did not accommodate mental limitations acknowledged at step three?

- Did the ALJ err at step three by evaluating Raymond's mental condition only under listing 12.04 (affective disorders) and not 12.06 (anxiety) and by not evaluating her physical impairment at this step?

I recommend that the decision of the Commissioner be reversed and the case remanded for further proceedings.

_____

[3] *Id.* at 15.

[4] *Id.* at 19.

[5] *Id.*

[6] *Id.* at 20.

## Analysis

**A.     The step four and step five findings**

*1.     The ALJ's findings*

In discussing the severity of Raymond's mental impairments at step three, the ALJ found that "[w]ith regard to concentration, persistence or pace, the claimant has moderate difficulties as the claimant demonstrated significant difficulty responding appropriately to stress or pressure in the workplace, or adapting to changes in the work environment."[7] At step four, the ALJ incorporated into the RFC limitations (1) infrequent contact with the general public and (2) no more than simple repetitive tasks.[8] At step five he found that with these limitations jobs existed in significant numbers that Raymond could perform.[9]

*2.     The record evidence*

Samar El-Sayegh, M.D., a psychiatrist, evaluated Raymond in August of 2006.[10] He completed a medical functional capacity assessment in September 2006 in which he opined that Raymond had moderate limitations in her abilities to (1) maintain attention and concentration for extended periods; (2) complete a normal workday and workweek without

---

[7] *Id.* at 15.

[8] *Id.*

[9] *Id.* at 19.

[10] *Id.* at 241-43. Both Raymond (ECF # 22, at 2) and the Commissioner (ECF # 15-1 at 2) designate Dr. El-Sayegh as a treating physician. The transcript, however, contains the records of only one evaluation. The ALJ also identified Dr. El-Sayegh as a treating source, although he erroneously stated that he is a psychologist. Tr. at 17. The record unambiguously shows that Dr. El-Sayegh is a psychiatrist. Tr. at 241-43.

-3-

interruptions from psychologically based symptoms; (3) perform at a consistent pace without an unreasonable number and length of rest periods; and (4) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances.[11]

The ALJ gave "little weight" to Dr. El-Sayegh's assessment because "the opinion is inconsistent with internal records, and the evidence of record."[12] The ALJ provided no further articulation on the weight assigned to Dr. El-Sayegh.[13]

Catherine Flynn, Psy.D., a state agency reviewing psychologist, prepared a mental residual functional capacity assessment in April of 2007.[14] In that assessment she rated Raymond as moderately limited in her ability to complete a normal workday and workweek without interruptions and to perform at a consistent pace without an unreasonable number and length of rest periods.[15] In the narrative explaining these ratings, Dr. Flynn stated that she gave primary weight to "the C/E consultant who provided the most current, detailed, and supported medical evidence."[16] She does not identify the consultant by name. But my review of the transcript leads me to conclude that the consultant was most probably Dr. El-Sayegh.

---

[11] *Id.* at 244.

[12] *Id.* at 18.

[13] As noted above, the ALJ characterized Dr. El-Sayegh as a treating psychologist. *Id.* at 17.

[14] *Id.* at 254-57.

[15] *Id.* at 255.

[16] *Id.* at 256.

-4-

Dr. Flynn also stated that Raymond had the capability to sustain concentration and persistence in simple, routine tasks.[17]

The ALJ assigned "little weight" to Dr. Flynn's opinion because "the evidence indicates that the claimant is more limited than assessed."[18] The ALJ makes no effort to explain how Dr. Flynn understated Raymond's limitations whereas Dr. El-Sayegh, whose evaluation Dr. Flynn gave primary weight to, overstated them.

Margaret Zerba, Ph.D., a psychologist, evaluated Raymond in May of 2009.[19] Dr. Zerba opined that Raymond's ability to perform simple, repetitive tasks was not impaired but that she had a marked impairment in her ability to withstand stress and pressures of day-to-day work activity because of her mental problems.[20] Dr. Zerba also evaluated Raymond as markedly impaired in her ability to interact with supervisors, co-workers, and the public.[21]

The ALJ gave Dr. Zerba's opinion "no weight" because he found that opinion inconsistent with the record.[22]

---

[17] *Id.*

[18] *Id.* at 18.

[19] *Id.* at 287-92.

[20] *Id.* at 292.

[21] *Id.* at 294.

[22] *Id.* at 18.

3.     *The adequacy of the ALJ's residual functional capacity finding*

Raymond grounds her challenge to the ALJ's steps four and five findings on the 2010

opinion of the Sixth Circuit in *Ealy v. Commissioner of Social Security*.[23]

In *Ealy* the ALJ credited the opinion of the state agency reviewing psychologist that

the claimant retained the ability to "sustain attention to complete simple repetitive tasks for

two-hour segments over an eight-hour day where speed was not critical."[24] The hypothetical

to the vocational expert incorporated no reference to the two-hour limitation or to speed not

being critical.[25] Rather it merely contained a limitation to simple repetitive tasks,[26] as did the

residual functional capacity finding.[27] Based on the vocational expert's response to the

hypothetical, the ALJ found that a significant number of jobs existed and Ealy not disabled.[28]

The district court affirmed the agency's decision.[29]

On appeal the Sixth Circuit approved the ALJ's crediting of the state agency

reviewing psychologist's opinion and the limitations therein.[30] It took issue, however, with

---

[23] *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504 (6th Cir. 2010).

[24] *Id.* at 509.

[25] *Id.* at 510.

[26] *Id.*

[27] *Id.* at 511.

[28] *Id.*

[29] *Id.* at 511-12.

[30] *Id.* at 514-15.

the ALJ's failure to incorporate into the hypothetical to the expert the two-hour limitation to sustain attention to complete simple repetitive tasks and the proviso that speed not be critical.[31]

The court noted that the reviewing psychologist had opined moderate limitations in Ealy's abilities to maintain attention and concentration for extended periods, to complete a normal workday and workweek[32] without interruptions from psychologically based symptoms, and to perform at a consistent pace without an unreasonable number and length of rest periods.[33] The ALJ concluded that Ealy had moderate difficulties with regard to concentration, persistence, and pace.[34] In finding the hypothetical to the expert deficient, the court cited approvingly cases stating the proposition that hypothetical limitations to "simple, routine, unskilled work" do not sufficiently address moderate deficiencies in concentration, persistence, and pace.[35]

In several cases post-*Ealy*, this Court seemingly adopted the rule that where the ALJ finds the claimant moderately deficient in concentration, persistence, and pace, a limitation

---

[31] *Id.* at 516.

[32] *Id.* at 516 n.4.

[33] *Id.*

[34] *Id.*

[35] *Id.* at 516-17, citing *Edwards v. Barnhart*, 383 F. Supp. 2d 920, 930-31 (E.D. Mich. 2005), and *Whack v. Astrue*, No. 06-4917, 2008 WL 509210, at *8 (E.D. Pa. 2008).

to simple repetitive tasks in the hypothetical to the vocational expert does not adequately address those deficiencies.[36]

The Commissioner cites to several other post-*Ealy* decisions of this Court declining to adopt a bright line rule that a limitation to "simple repetitive tasks" in an RFC and hypothetical to the VE is not adequate to address a claimant's moderate impairment as to concentration, persistence, and pace where he or she has significant difficulty responding appropriately to stress or pressure in the workplace or adapting to changes in the work environment.[37] The Court in *Jackson* stated that moderate difficulties in concentration, persistence, and pace must be coupled with a finding of additional "speed- and pace-based restrictions" to make simple repetitive tasks an inadequate limitation in the RFC and hypothetical to the expert.[38]

The law in this District on the proper application of *Ealy* remains in the development stage as shown by the authorities cited by the parties in support of their respective arguments. It appears that a finding of a moderate impairment in concentration, persistence, or pace, standing alone, will not render a limitation to simple repetitive work inadequate. On the other

---

[36] *Candela v. Astrue*, No. 1:10CV1603, 2011 WL 3205726, at *10-11 (N.D. Ohio July 28, 2011); *Johnson v. Astrue*, No. 1:09CV2959, 2010 WL 5559542, at *8 (N.D. Ohio Dec. 3, 2010). Counsel for Raymond in this case represented the plaintiffs in the *Candela* and *Johnson* cases.

[37] *Steed v. Astrue*, No. 4:11CV204, 2012 WL 1097003, at *9 (N.D. Ohio Mar. 30, 2012); *Jackson v. Comm'r of Soc Sec.*, No. 1:10CV763, 2011 WL 4943966, at *4 (N.D. Ohio Oct. 18, 2011). Counsel for Raymond in this case also represented the plaintiffs in the *Steed* and *Jackson* cases.

[38] *Jackson*, 2011 WL 4943966, at *4.

hand, a finding of speed or pace restrictions, or durational restrictions (as in *Ealy*),[39] will necessitate greater, specific limitations in the RFC and hypothetical.

The Commissioner argues that the limitation to simple, repetitive work suffices here because Raymond testified that the work itself did not cause her inability to work but rather her anxieties and stress about getting to work and being around people.[40] The Commissioner also points to Dr. Flynn's statement that Raymond had the capability to sustain concentration and persistence in simple, routine tasks.[41]

As I observed at the oral argument in this case, I am hindered in the judicial review of the finding at issue here because the ALJ failed to adequately articulate his reasons for the weight assigned to the medical sources.[42] Raymond does not raise such articulation as grounds for remand. Nevertheless, I must take this inadequacy into account in deciding if substantial evidence supports the RFC finding.

Here the ALJ specifically found "with regard to concentration, persistence or pace the claimant has moderate difficulties as the claimant has demonstrated significant difficulty responding appropriately to stress or pressure in the workplace, or adapting to changes in the

---

[39] *Ealy*, 594 F.3d at 516 (restriction to working two-hour segments during an eight-hour workday).

[40] Tr. at 32-33.

[41] *Id.* at 256.

[42] *See generally*, *Bouter v. Comm'r of Soc. Sec.*, 1:09CV2682, 2011 WL 5008564, at *1-4 (N.D. Ohio Oct. 19, 2011).

work environment."[43] Although the ALJ assigned their opinions little or no weight, Dr. El-Sayegh, the treating psychiatrist, and Dr. Flynn, the reviewing psychologist, agreed that Raymond had moderate difficulties in completing a normal workday and workweek and performing at a consistent pace without an unreasonable number and length of work periods.[44] These opinions are consistent with the ALJ's finding of moderate difficulties in concentration, persistence, or pace.

Based on this record, the RFC and hypothetical to the VE should have either included some durational limitation, as in *Ealy*, or the ALJ should have explained why one was not needed. Because he did no more than provide a cursory explanation of the opinions of the two most important medical source opinions in the record, I cannot evaluate why he chose to omit a durational limitation. This case should be remanded for reconsideration of the RFC and for a revised hypothetical to the VE if the RFC changes based upon that reconsideration.

**B.      The step three findings**

At step three the ALJ found that Raymond's impairments did not meet or equal any listed impairment in Appendix 1.[45] The ALJ specifically addressed listing § 12.04 only.[46] Raymond argues that the ALJ erred by not identifying and articulating with respect to

---

[43] Tr. at 15.

[44] *Id.* at 244 (Dr. El-Sayegh) and 255 (Dr. Flynn).

[45] *Id.* at 14.

[46] *Id.* at 14-15.

-10-

§ 12.06 (anxiety) and the listing for the physical impairment for status post right ankle fracture.

The Sixth Circuit has held that at step three there is no heightened articulation standard where the ALJ's findings have the support of substantial evidence.[47] But in *Reynolds v. Commissioner of Social Security*,[48] the court reversed because the ALJ failed to address or analyze a listing related to a physical impairment found severe at step two.[49] In recent cases this Court has reversed where the ALJs made unaffirmable cursory or summary declarations that a claimant did not meet or equal a listing without evidence to that effect from a medical expert[50] or without an extensive, reviewable discussion on the record.[51] These authorities emphasize the dangers to meaningful review of a step three decision posed by a mere rote recitation of boilerplate language by an ALJ.

Here the ALJ admittedly provides no analysis/articulation with respect to listings applicable to Raymond's anxiety and physical impairments. The Commissioner argues

----

[47] *Bledsoe v. Barnhart*, 165 F. App'x 408 (6th Cir. 2006).

[48] *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411 (6th Cir. 2011).

[49] *Id.* at 415-16.

[50] *See*, *e.g.*, *Keyes v. Astrue*, No. 1:11-CV-00312, 2012 WL 832576 (N.D. Ohio March 12, 2012); *Hakkarainen v. Astrue*, No. 1:10-CV-2463, 2012 WL 398595 (N.D. Ohio Jan. 19, 2012); *Hunter v. Astrue*, No. 1:09-CV-2790, 2011 WL 6440762 (N.D. Ohio Dec. 20, 2011); *Darabed v. Astrue*, No. 1:10-CV-2626, 2011 WL 7456148 (N.D. Ohio Dec. 6, 2011); *May v. Astrue*, No. 4:10-CV-1533, 2011 WL 3490186 (N.D. Ohio June 1, 2011).

[51] *See*, *Marok v. Astrue*, No. 5:08-CV-1832, 2010 WL 2294056 (N.D. Ohio June 3, 2010); *but see*, *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647 (6th Cir. 2009) (record evidence made ALJ's failure to discuss whether claimant met or equaled a listing harmless error because no additional analysis by the ALJ would have changed the result).

vigorously that the record contains overwhelming, substantial evidence that Raymond did not meet or equal these listings.[52] This Court has cautioned against reliance on the Commissioner's post hoc rationalizations as a basis for excusing an ALJ's failure to make findings and articulate as to those findings at step three.[53] On the other hand, the Sixth Circuit has found the ALJ's failure to discuss a listing harmless error where no additional analysis by the ALJ would have resulted in a finding for the claimant.[54]

Because of the recommendation to remand for reconsideration of the steps four and five findings, the Court need not address the ALJ's alleged errors at step three. If the Court orders a remand, the ALJ should articulate reasons sufficient to permit meaningful judicial review of its findings at that step and make consideration of harmless error unnecessary.

I add the caveat that Raymond has the burden of proof at step three,[55] and her counsel must clearly state on remand any listing sections she wants to place at issue and the record evidence in support of her claim that she meets or equals the requirements of those sections.

## Conclusion

Based on the foregoing analysis, the decision of the Commissioner to deny Raymond's application for supplemental security income should be reversed. I recommend

---

[52] ECF # 15 at 10-13.

[53] *May*, 2011 WL 3490186, at *9.

[54] *Rabbers*, 582 at 654-61 (6th Cir. 2009).

[55] *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999).

reconsideration of the residual functional capacity finding consistent with this report and recommendation. If the Court remands the case, the ALJ should also reconsider the finding at step three, and articulate the reasons in support of that finding as to each applicable listing section consistent with the case authorities of this District and Circuit.[56]

Dated: June 4, 2012                                        s/ William H. Baughman, Jr.
                                                          United States Magistrate Judge


## Objections

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the District Court's order.[57]

---

[56] If the ALJ makes a finding favorable to Raymond at step three, it follows that he need not proceed on to step four of the sequential evaluation process.

[57] See, *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also*, *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).

-13-